UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PENN-AMERICA INSURANCE COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) Civil No. 07-215-P-S ) |
| MICHAEL DAIGLE d/b/a MIKE'S CARPENTRY, et al., | ) ) ) |
| Defendants | ) ) |

*RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

The plaintiff, Penn-America Insurance Company, moves for summary judgment in this declaratory judgment action arising out of a dispute over the interpretation of an insurance policy. I recommend that the court grant the motion.

### I.   Summary Judgment Standard

### A.   Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

### B.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id.* The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each

supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## II. Factual Background

The following undisputed material facts are appropriately supported in the plaintiff's statement of material facts submitted in accordance with Local Rule 56.

The plaintiff is a Pennsylvania corporation with a principal place of business in Bala Cynwyd, Pennsylvania. Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 37) ¶ 1; Opposing Statement of Material Facts ("Defendants' Responsive SMF") (Docket No. 42) ¶ 1. Defendant Michael Daigle is a resident of Saco, Maine. *Id*. ¶ 2. Defendant Lee Lavigne is a resident of Augusta, Maine. *Id*. ¶ 4.

Michael Daigle d/b/a Mike's Carpentry is the named insured on Penn-America policy number PAC 6376498 (the "Policy"), effective April 20, 2004, through April 20, 2005, which was cancelled effective July 12, 2004. *Id.* ¶ 3. The Policy provides commercial general liability coverage for bodily injury and property damage caused by an occurrence that takes place in the coverage territory during the policy period, according to the Policy's terms, limitations, conditions, and exclusions. *Id.* ¶ 5.

Francis Driscoll owns property at 32-34 Quimby Avenue in Westbrook, Maine. *Id.* ¶ 7. The property is a four-unit apartment building that his wife, Ellen Driscoll, assists him with managing. *Id.* ¶¶ 8-9. In 2004, Ellen Driscoll hired Michael Daigle to re-roof the Quimby Avenue building. *Id.* ¶ 10. There are two dormers above the roofline on the building, and Mrs. Driscoll asked Daigle to make sure that the windows in these dormers were sealed properly while he was doing the roofing work. *Id.* ¶ 11.

Daigle's work consisted of removing the existing roofing, re-roofing the structure, repairing a window that his crew broke while working, and some work on the dormers. *Id.* ¶¶ 13-14.[1] Daigle was working on the Quimby Avenue job with Charles Raybine. *Id.* ¶ 15. On or about May 2, 2004, Lavigne went to the Quimby Avenue jobsite with a friend, Archie Perry. *Id.* ¶¶ 16-17. Perry went to the jobsite to offer to purchase supplies for Daigle to use in the roofing job. *Id.* ¶¶ 18-19.[2] When Perry and Lavigne arrived at the jobsite, Lavigne climbed up on the scaffolding that had been set up for the Driscoll job. *Id.* ¶ 20.

---

[1] The defendants purport to deny paragraph 13 of the plaintiff's statement of material facts, Defendants' Responsive SMF ¶ 13, but the denial does not address the portion of the paragraph included in the text, which is supported by the citation given to the summary judgment record and accordingly is deemed admitted.

[2] The plaintiff emphasizes that it has adopted Lavigne and Perry's deposition testimony on this point only for purposes of summary judgment. Plaintiff's SMF at 4 n.1. Factual admissions made for purposes of motions for summary judgment are not taken as admissions for any other purpose, should the matter remain active after resolution of the motion.

The scaffolding was set up that day to permit access to the roof by Daigle and others working on the job. *Id*. ¶ 23. The scaffolding was erected to support planks located over 24 feet from the ground, to permit workers standing on the planks to reach and climb onto the roof. *Id*. ¶ 24. As he climbed up the scaffolding, Lavigne fell when scaffolding snapped. *Id*. ¶¶ 20-21. He was injured and has asserted a claim against Daigle. *Id*. ¶¶ 20, 22. At the time of the accident, Raybine was also on the scaffolding, either attempting to straighten out crooked staging or starting to re-roof the structure. *Id*. ¶ 25.

### III. Discussion

#### A. The Endorsement Language

The parties' dispute centers on Standard Change Endorsement A to the Policy, a form on which is entered the policy number, the name of the insured, the effective date and time of the endorsement, and, in a box denoted "Countersigned by" the entry "AT MIDDLETOWN, CT[.]" Penn-America Insurance Company Policy No. PAC6376498 (Exh. A to Complaint (Docket No. 1)), at 7.

The endorsement presents three alternative opening phrases, of which the following is checked: "In consideration of the premium charged, it is understood and agreed that[.]" There then follows 19 numbered alternative categories, each with a space for a check mark, but none of which is checked. These 19 categories are in turn followed by four alternative courses of action: "is corrected to read as listed below[,]" "is amended or changed to read as listed below[,]" "the following form is made a part of the Policy[,]" and "the following form is deleted from the Policy[.]" None of these actions is checked. Following these four alternative courses of action, the following exclusion is inserted: "EXCLUDING ANY AND ALL CLAIMS ARISING FROM ROOFING[.]" *Id.*

On its face, the endorsement thus reads: "In consideration of the premium charged, it is understood and agreed that EXCLUDING ANY AND ALL CLAIMS ARISING FROM ROOFING[.]"  This is not a complete sentence, nor is it a comprehensible fragment of one.  Seizing on this apparent oversight,[3] the defendants contend that "[t]here is no operative roofing exclusion" in the Policy, because the exclusion form itself is "not fully completed."  Opposition to Plaintiff's Motion for Summary Judgment ("Opposition") (Docket No. 41) at 1.  The plaintiff asserts that the endorsement "states that 'in consideration of the premium charged' the endorsement is 'excluding any and all claims arising from roofing from the coverage provided by the Policy."  Plaintiff's Motion for Summary Judgment ("Motion") (Docket No. 36) at 4.  That is an understandable presentation of the endorsement, but one that does not hew faithfully to the endorsement's language.

In its reply memorandum, the plaintiff reaffirms its contention that the endorsement as executed must be so read, but it also points to the fact that the endorsement, Form S 1004 (8/91), "was 'made a part of this Policy at time of issue'" by a statement to that effect on the Policy's declarations page.  Reply in Support of Plaintiff's Motion for Summary Judgment ("Reply") (Docket No. 43) at 1.  If the endorsement needs saving, this argument will not suffice.  The fact that the endorsement is explicitly included in the Policy by the declarations page does not make the executed endorsement form any more comprehensible or complete.

The parties agree applies that Maine law applies in this case.  Opposition at 2; Reply at 3.  Under Maine law, an ambiguity in a provision of an insurance contract is to be construed against the insurer and in favor of coverage.  *Kinney v. Maine Mut. Group Ins. Co.*, 2005 ME 70, ¶ 18, 874 A.2d 880, 885.  Exclusions are disfavored and will be construed strictly against the insurer.

---

[3] Many comprehensible sentences could be created on the form if any one of the 19 categories and any one of the four concluding phrases were each checked, or if one of the last two concluding phrases were checked.

*Id*.  A provision in an insurance contract is ambiguous if it is reasonably susceptible of different interpretations.  *Id.*

It is on this last point that the defendants' argument founders.  Contrary to their argument, Opposition at 2, the endorsement is not "reasonably susceptible of different interpretations" merely because "certain items have to be checked" and none were.

Endorsement A, even in the severely truncated and facially-incomplete form that appears in the Policy, is reasonably susceptible of only one interpretation: that any and all claims arising from roofing are excluded from coverage under the Policy.  In interpreting what language is provided by the endorsement, the court need not ignore the fact that it appears in a liability insurance policy.  What such a policy would "exclude" is coverage for specified events, injuries, or losses.

To disregard the endorsement entirely, as the defendants advocate, would not be to construe the endorsement strictly against the insurer, but rather to render it meaningless, an approach disfavored by the Maine Law Court, even when the contract at issue is one of insurance.  *See, e.g., Pelkey v. General Elec. Capital Assurance Co*., 2002 ME 142, ¶ 15, 804 A.2d 385, 388.  An "ordinary person in the shoes of the insured" would understand that the endorsement at issue here excludes coverage for claims arising from roofing.  *See City of South Portland v. Maine Mun. Ass'n*, 2008 ME 128, ¶ 7, 953 A.2d 1128, 1130.

### B.  "Arising from" Roofing

Having concluded that the endorsement does exclude claims arising from roofing from coverage under the Policy, I turn to the plaintiff's argument that Lavigne and Perry "were aware that Daigle was doing a roofing job and traveled to Westbrook specifically to see  if Daigle needed any supplies . . . for use in the roofing work being done that day."  Motion at 4.  Thus, the

7

plaintiff concludes, Lavigne's purpose in being on the site was "to offer assistance in connection with the roofing job," and, as his injuries were caused by the failure of the scaffolding "set up to facilitate the roofing work being done that day," his injuries arose from roofing and are not covered by the Policy. *Id.* While this statement enlarges a bit on the facts presented in the plaintiff's statement of material facts, those additions are not material to the dispute before the court.

Not surprisingly, the defendants contend that there is a genuine factual dispute about whether Lavigne's injuries "ar[o]se from roofing," because the construction project at the Quimby Avenue site included "non-roofing aspects,"[4] and because Lavigne "was not performing any roofing services at the time of his fall." Opposition at 3-4. They cite no case law in support of their argument. There can be no dispute that the primary purpose of the Quimby Avenue job was roofing, and that the scaffolding from which Lavigne fell was set up to be used in roofing the building. That should suffice to make it clear that Lavigne's injuries "arose from roofing."

The defendants' proposed construction of the words "arising from" to require that roofing be the only work done at the site by the insured and that the injured person himself or herself be engaged in roofing at the time of the accident in order for the exclusion to apply is too narrow. "Arising from" implies "something broader than causation." *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985). Like the words "arising out of," this term has "much broader significance than 'caused by.'" *Id.* (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liability Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951)). It means "'originating from,' 'having its origin in,' 'growing out of,' or 'flowing from' or in short, 'incident to, or

---

[4] The defendants cite to their responses to certain paragraphs of the plaintiff's statement of material facts in support of this argument. Opposition at 3. As this court has repeatedly advised the bar, a party opposing summary judgment may not rely on new facts asserted in its responses to the moving party's motion for summary judgment as positive support for its arguments. Such facts must be separately stated in a statement of additional material facts, to which the moving party has an opportunity to respond under Local Rule 56.

having connection with[.]'" *Id*. The Maine Law Court has given the term "arising out of" a broad interpretation when it appears in insurance contracts, and has cited with approval in this context the First Circuit's reading of the term to mean "originating from, growing out of, flowing from, incident to or having connection with." *Acadia Ins. Co. v. Vermont Ins. Co.*, 2004 ME 121, ¶ 8, 860 A.2d 390, 393.

Applying the Law Court's expansive reading of a virtually identical term[5] to the facts of this case can have only one result: Lavigne's injuries "arose from roofing." His injuries had their origin in roofing, grew out of roofing, flowed from roofing, and were incident to roofing. On the showing made, the plaintiff is entitled to summary judgment in this action.

### IV. Conclusion

For the foregoing reasons, I recommend that the plaintiff's motion for summary judgment be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 26th day of May, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[5] Without addressing the question explicitly, the Law Court in *Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 599 (Me. 1996), treated the phrases "arising out of" and "arising from" as identical in a case construing insurance policy language.